STAHL ET AL., COMMISSIONERS, v. STATE.

1. PRESUMPTION AS TO PLACE WHERE OFFENSE WAS COMMITTED.

When the law directs where an officer shall transact his business and he is indicted for an offense committed as such officer, it will be presumed that the offense was committed where the law directs the business to be done.

2. REPEALS BY IMPLICATION NOT FAVORED.

An act of the legislature will not be held to have been repealed by implication when another act is passed, if they can be construed to stand together.

3. PRESUMPTION AS TO REASONS FOR EXCUSING JUROR.

It will be presumed, in the absence of facts appearing to the contrary, that there were proper reasons for excusing a juror and filling his place with another.

4. ERRORS IN CHARGE TO GRAND JURY.

Errors of a court in the charge to a grand jury cannot be reached by a plea in abatement.

5. EVIDENCE OF SIMILAR UNLAWFUL PROPOSITIONS.

County commissioners were indicted for wilfully, corruptly and unlawfully entering into a contract with architects for plans and specifications for a court house: *Held*, it is competent to show that the commissioners on other occa-

sions prior to entering into the unlawful contract, had made unlawful proposi-
tions to other architects for the purpose of showing their corrupt motiv

6. MISCONDUCT IN REFUSING TO PERFORM DUTIES.

County commissioners charged with specific duties, who wilfully refuse to per-
form them are guilty of misconduct in office within the meaning of section
6915 of Revised Statutes, although no money consideration is shown.

PRICE, J. (orally).

At the February term of the court of common pleas of Wood county,
Ohio, for the year 1895, the grand jury presented an indictment against
the plaintiffs in error charging them with official misconduct in office as
commissioners of said county; certain acts and proceedings were done
and had by the commissioners in the discharge of their official duties
which are charged in the indictment as official misconduct.

The prosecution is founded on section 6915 of Revised Statutes,
which reads as follows: "Whoever, being a county commissioner, is
guilty of any misconduct in office, shall be fined not more than four hun-
dred dollars and forfeit his office."

The accused parties each entered a plea of not guilty, and in June,
1895, were brought to trial and found guilty by a jury. A motion for a
new trial was overruled, as was also a motion in arrest of judgment.
Jacob Stahl was adjudged to pay a fine of one hundred dollars, and, as his
term of office had before that time expired, no forfeiture of office was ad-
judged. Each of the other defendants were fined one hundred dollars and
his office declared forfeited.

Exceptions were taken from the first to last in the course of the trial,
and error is prosecuted to reverse the judgment of the lower court to ob-
tain a new trial.

When arraigned, the defendants filed their motion to quash the in-
dictment. That was overruled, and they filed a plea in abatement which
was held bad on demurrer, and then they demurred to the indictment.
The court overruled the demurrer, and exceptions were taken to these
several rulings.

Inasmuch as counsel argued the same objections to the indictment in
support of both the motion to quash the indictment and the demurrer,
we will pass upon them together as both seem intended to raise the same
questions, suggesting, however, that as to an objection reaching to the
substance of the indictment, a demurrer is the proper pleading.

The first count in the indictment is as follows: "The jurors of the
grand jury of the state of Ohio within and for the body of this county of
Wood impanelled, sworn and charged to inquire of crimes and offenses
committed within the said county of Wood, in the name and by the au-
thority of the state of Ohio, on their oaths, do find and present, that
Jacob Stahl, Samuel Knight and James Gibson, late of said county, on
the third day of May, in the year of our Lord one thousand eight hun-
dred and ninety-three, in said county of Wood and the state of Ohio, were
then and there the county commissioners in and for said county, having
been duly and legally elected and duly qualified to perform the duties of
said office of county commissioners, during the term of office to which
they had been severally elected as aforesaid; that said Jacob Stahl, Sam-
uel Knight and James Gibson had for a long time before said 3d day of
May, 1893, been, and for a long time thereafter continued to be, the
county commissioners in and for said county, duly elected and qualified
as aforesaid. And the said Samuel Knight and James Gibson still con-
tinue to be and now are county commissioners in and for said county and

are acting in that official capacity. That said Jacob Stahl, Samuel Knight and James Gibson, as such county commissioners of said Wood county, Ohio, acting in their said official capacity did, on said 3d day of May, 1893, resolve upon and declare their intention to erect a new court house in and for said county of Wood and state of Ohio, under and by virtue of the provisions of an act of the general assembly of the state of Ohio entitled, 'An act to authorize the commissioners of Wood county, Ohio, to build a court house,' which said act was passed and took effect on the 2d day of February, A. D. 1893. .

"That thereupon, on said 3d day of May, A. D. 1893, said Jacob Stahl, Samuel Knight and James Gibson, as such county commissioners of said county as aforesaid, did unlawfully, wilfully, knowingly and corruptly make and enter into a certain contract with a partnership then and there doing business under the firm name and style of Yost & Packard, whereby they employed the said Yost & Packard to make the plans and specifications for and supervise the erection of said new court house. That prior to said last named date, to wit, on the 28th day of February, A. D. 1893, the judges of the circuit court in and for said county of Wood and state of Ohio, had duly and legally appointed Earl W. Merry, Frank A. Baldwin, Edward B. Beverstock and John Ault as the "building committee," under and in accordance with the provisions of the aforesaid act of the general assembly of the state of Ohio to act and vote with the aforesaid county commissioners in procuring, making and approving plans, estimates and specifications for said court house, and in determining all questions in connection with the erection of said court house, all of which the said Jacob Stahl, Samuel Knight and James Gibson then and there well knew, but they, the said Jacob Stahl, Samuel Knight and James Gibson, as such county commissioners of said county as aforesaid, unlawfully, knowingly, wilfully and corruptly failed, neglected, omitted and refused to act with the aforesaid building committee in the procuring of said plans and specifications for said court house, and unlawfully, knowingly, wilfully and corruptly refused to permit the aforesaid building committee to act with or to vote with them, the said Jacob Stahl, Samuel Knight and James Gibson, as such county commissioners of said county as aforesaid, in procuring the said plans and specifications for said court house, and in making the aforesaid contract therefor, and unlawfully, knowingly, wilfully and corruptly prevented the aforesaid building committee from in any manner acting or voting or participating in the procuring of said plans and specifications for said court house and in providing for the supervision of the erection thereof.

"And they, the said Jacob Stahl, Samuel Knight and James Gibson, as such county commissioners as aforesaid, in the manner and by the means hereinbefore stated, and without the co-operation therein by the aforesaid building committee, did unlawfully, knowingly, wilfully and corruptly make and enter into the aforesaid contract with said firm of Yost & Packard, and caused the aforesaid plans and specifications for said court house to be made by said firm of Yost & Packard, and did commence and proceed with the erection of said court house, and did cause the work of the erection and construction of said court house to be done under the supervision of said firm of Yost & Packard.

"And so the jurors aforesaid, on their oath aforesaid, do find and say that the said Jacob Stahl, Samuel Knight and James Gibson, being county commissioners as aforesaid, are guilty of misconduct in office, in the manner and form aforesaid, contrary to the form of the statute in such

case made and provided and against the peace and dignity of the state of Ohio."

The only objection urged in argument to this court in the indictment was the want of an allegation of venue; that in no part of the indictment which described the body of the crime, is there an allegation of the county in which the unlawful acts of the commissioners were alleged to have taken place.

The general rule of criminal pleading is very familiar, that an indictment, as one of its essential features, must contain the averment of time and place, and having once been properly plead in that regard, that the use of the words "then and there," as to each subsequent fact, will be a sufficient averment of time and place.

If the state had taken the slight precaution to have written in this indictment these three little words "then and there," in one or two places in their proper connection, it would have relieved the court of a great deal of labor and embarrassment in coming to its conclusion.

The indictment does allege that these parties were the duly elected, qualified and acting county commissioners of Wood county, and alleges that in some place—not naming the place—on the 3d day of May, 1893, they passed a resolution to erect a court house under the provisions of the special act set out in the indictment and which was passed in 1893. It alleges that they wilfully, unlawfully, corruptly and in violation of the provisions of the special act, entered into a contract with Yost & Packard, architects, and, that afterwards they unlawfully, wilfully and corruptly refused permission to the building committee to participate in the selection of the plans and specifications and the employment of an architect to supervise the building. There is in these averments no reference to the county and place where their contract took place, except as we may refer back to the county in which they were elected and were serving and discharging their duties.

Is the indictment sufficient under the averments as to the place or venue? It is urged on the part of the state that this omission is cured by a provision of the criminal code, which provides, in substance ,that the indictment shall not be considered defective for want of an allegation of time and place where they have once been stated. See section 7215 Revised Statutes. The intention of the legislature no doubt was to cure a great many of the technicalities which had long pertained to common law pleading and practice in criminal cases, and afford relief against rules of procedure which had become in many instances, a burden to the state and a means for the guilty in some instances to escape justice. But speaking for myself, and myself alone, if the case stood simply upon that section, I would doubt whether the indictment is sufficient as to venue; but there are other provisions of the statute which necessarily must have their bearing when we come to construe the indictment. The indictment charges, that the defendants, on the 3d day of May, 1893, were the duly elected, qualified and acting commissioners of Wood county, Ohio, and that as such commissioners, they did, on the 3d day of May, 1893, unlawfully, wilfully and corruptly enter into a contract with Yost & Packard, architects, etc., etc., and that they refused to allow the building committee appointed under the fifth section of the special act to participate with them, etc. There is but one place under the law where the public business of this county of Wood can be transacted. Section 846 of the Revised Statutes reads: "There shall be four regular sessions of the commissioners each year; in their office at the

County seat, commencing, respectively, on the first Monday of March, June, September and December, at each of which meetings they shall transact such business as is required of them by law.'

The next section provides that a majority of the board shall constitute a quorum. Section 848 provides how they shall organize. Section 849 reads: "All the proceedings of the board shall be public at the office of the auditor, or the usual office of the commissioners, and not elsewhere, and its p roceedings shall, as far as possible, be in conformity with the rules of parliamentary law."

In addition to the curing effect of the section referred to in the criminal code, it appears by express provision of law that there is but one place where the county commissioners can transact their public business, which must be done at the office of the auditor or the usual office of the commissioners, and not elsewhere, and the indictment proceeds to allege that these defendants were the duly elected and qualified county commissioners of Wood county, and were serving as such at the time of committttng of the alleged offense, and by every reasonable rule of construction, that means in this county. The only place where the things complained of could be done and transacted was in Wood county.

Such an averment of time and place in the indictment in the preliminary history of the offense is sufficient, and the demurrer was properly overruled. So in the light of these sections we hold that the indictment is good as against the demurrer and the motion to quash.

Just here we are led to inquire what became of the second count in the indictment. It is true that the court in charging the jury and not elsewhere, practically decided that the second count charged no offense; that it was not necessary that the contract for the employment of the architect and the making of the plans and specifications should be let to competitive bidding; and that it was not absolutely essential that the contract should have the approval of the prosecuting attorney of the county upon it. Those were the two things complained of, and charged as a violation of the law, in the second count.

The court in his charge laid down the law that competitive bidding was not required under the law, nor was it necessary to have the approval of the prosecuting attorney upon the contract in order that it might be legal and valid.

They were not instructed to respond in their verdict to the second count, and there was no *nolle* entered by the state, and the jury came in with their verdict as guilty on the first count, but say nothing as to the second count, and it stands there in a state of suspension, and what effect it will have on the case hereafter, we do not say. There might be a case in which such action on the part of the court might lead to reversal. We do not say that is the case here, but we commend a different practice when dealing with such an important question.

The defendants below then filed a plea in abatement. The statute provides what questions may be raised by a plea in abatement. Section 7251 reads: "A plea in abatement may be made when there is a defect in the record, which is shown by facts extrinsic thereto."

Now, in the light of that provision we find that the first ground for the plea to be this: "Because after said grand jury was impaneled one of the members thereof, *i. e.*, John Rex, was excused by the court without lawful cause and solely to make room on said grand jury for Thomas

F. Conley, then and now the official reporter of the court, he being more acceptable to the prosecution than said John Rex, and said John Rex was solicited and prevailed upon by the prosecuting attorney and others forwarding this prosecution before the grand jury, to surrender his place on said grand jury to said Thomas F. Conley, and because said Thomas F. Conley who served as one of said grand jury which found and returned said indictment was not summoned or selected as a grand juror as required by law, and said Thomas F. Conley was not legally qualified to act as one of said grand jury."

There is also a similar ground alleged in this plea as to other talesmen who were placed upon this grand jury, and it is claimed that inasmuch as the legislature at its last session passed a law making a different and new system of drawing and securing grand and petit jurors, that the statute authorizing the court to fill the panel from bystanders or by talesmen has been repealed by implication.

Taking these questions contained in this plea as to impanelling the grand jury altogether, we proceed to notice what there is in this claim of repeal by implication of the section which authorizes the court to fill the panel.

Section 7 of the act of 1894, provides that "sections 5163, 5164, 5165 and 5166 of the Revised Statutes are hereby repealed. This act shall not be so construed as to affect any jury already drawn for the terms of courts about to be in session when the first selection shall be made thereunder."

These sections which are expressly repealed are a part of a series of sections upon the same subject, and to ascertain the intention of the legislature it is perhaps well enough to see the location that these sections occupy in the statute. (See Ohio Laws of 1894.) Section 5162 of the Revised Statutes provides for the number and selection of jurors in common pleas court, how that number is ascertained by the clerk, and regulates his conduct with reference to certifying that number to the trustees of the various townships, etc., etc. Section 5163 provides when and how they are to be apportioned throughout the county. Section 5164 provided for the selection of jurors by the trustees. Section 5165 provided for failure to return proper lists and section 5166 provided for the selection of additional jurors. These, I say, were expressly repealed, leaving section 5162 standing as it is in the Revised Statutes. Section 5167, as to drawing grand and petit jurors, still remains, and section 5168 provides for drawing jurors for a special term of the common pleas and for circuit court. Section 5169 is as to service and return of the venire; 5170 as to name of juror drawn but excused, to be returned to box; 5171, when talesmen are to be summoned; 5172 special venire; and 5173 when venire for talesmen to issue; 5174 special venire when sheriff is a party. Now can it be fairly claimed that because a new system of drawing and furnishing petit and grand jurors has been made by statute of 1894, that necessarily and by implication the whole act embodied in the Revised Statutes regulating the selection and impanelling of petit and grand jurors has been repealed? Now there has been settled in Ohio, if anything has been settled, by a long course of decisions, the doctrine that repeals by implication is never favored. In the case of *Heirs of Ludlow* v. *Johnson*, 3d Ohio Report, page 565, the court say: "The law in question is not expressly repealed by the last cited act. If repealed at all, it is done by implication. When the provisions of two statutes are so far inconsistent with each other that both cannot be enforced, the latter must pre-

vail. But, if by any fair course of reasoning, the two can be reconciled, both shall stand. When the legislature intend to repeal a statute, we may, as a general rule, expect them to do it in express terms, or by the use of words which are equivalent to an express repeal. No court will, if it can be consistently avoided, determine that a statute is repealed by implication." Also, see the case of *The State* v. *The Commissioners of Franklin County*, in 20th Ohio State Report, at page 421. The court in its opinion on page 424 say: "The rules for the construction of statutes in cases of this kind have been announced frequently by the court, namely: That the doctrine of statutory repeals by implication is not favored, and that such repeals will not be declared unless they are necessarily implied. And that statutes in *pari materia* should be construed so as to give effect to all their provisions, and if they can be construed so as to stand well together, there is no repeal by implication." In the 22d Ohio State, at page 508, the court on page 515 say: "In thus holding we adopt and approve the principle of the rule laid down in other cases, towit: That a subsequent statute treating a subject in general terms, and not expressly contradicting the provisions of a prior act, shall not be considered as intended to affect the more particular and positive provisions of the prior act, unless it be absolutely necessary to do so in order to give its words any meaning." These sections not expressly repealed, especially sections 5170 and 5171 authorizing the court to fill the panel by calling bystanders, was intended to provide for an emergency. It was stated by counsel in argument that in Cincinnati, Columbus and elsewhere, since this statute has gone into effect, it has been the practice in these counties to draw by the use of the wheel; but that would simply prove a practice, and does not in any way strengthen the position that these sections are repealed by implication. To illustrate the predicament that a court might be in: Suppose from sickness or some other cause there should be several vacancies in the panel—either grand or petit jurors. If we go by the new law as the only method of filling the vacancies, the proper officer is to use the wheel to ascertain the names of persons who are to be summoned; a venire must issue for the parties who may reside in remote parts of the county, and it would take a number of days before number of the jurors could be brought into court, under the new statute. This is one reason why the legislature would leave the other provisions to remain, to provide for such an emergency. The administration of justice might stop for several days if there was no such relief.

There is no question in our minds but what the sections referred to are still in force and that the court had the power to fill the vacanies from the bystanders.

These sections can operate harmoniously with the new system and were intended to stand as a part of the jury law.

There is no fact in the plea reaching to the disqualification of the parties placed on the grand jury by order of the court. The plea says they were not duly qualified; but for what reason? By reason of non-residence, mental disqualifications or what? It pleads a legal conclusion and so on through the entire claim made upon that subject. It states that "B. L. Peters and John Loe, two of the grand jurors, regularly chosen and summoned to serve upon said grand jury, were not in any way disqualified from serving thereon, and that they were without lawful reason wrongfully excused." The record shows that the court for some reason did excuse Mr. Peters and Mr. Loe. It is fair in a reviewing

court looking to the action of an inferior court, and it is a rule of law, to presume that there is some good reason existing for the action of the court in thus putting other parties on the grand jury, and it would lead to a very peculiar investigation if the court under such a plea as this, would go into the motives of the presiding judge for calling in other persons to take their seats on the grand jury. It will be presumed, in the absence of facts appearing to the contrary, that there were proper reasons existing to excuse a member of the jury and fill his place with another.

There is another ground in this plea: That the indictment is insufficient in law to charge the defendants with a crime. That is not a proper part of a plea in abatement. It is a question to be raised by motion to quash or by demurrer.

It further sets out at great length the charge that the court gave at the time this grand jury was impanelled and put in charge of this particular investigation. He delivered quite an extensive address of a somewhat inflammatory nature which, it is urged, tended to bias the grand jury in favor of an indictment. We will not take time to read this extended charge, if it can be so called, given by the court to the grand jury. We infer from the language that the court was wrought up to a very high degree of righteous indignation by what had occurred, and if the language is somewhat florid and some of it might not be approved if the members of this court were called upon to criticise it, that is a matter that cannot be raised by a plea in abatement.

There are a number of offenses that are by statute made the subject of a special charge to the grand jury and outside of that we know of no statute that requires the court to give a charge except in defining the character of such offenses as may be brought into court on transcript, or may otherwise come to his knowledge. This charge is not a proper matter of record. It cannot be reached by a plea in abatement. What effect, if any, the remarks of the judge had upon the grand jury we do not know, and it is not our province to inquire. These parties had no standing in court as yet, and the good men and true that we presume were selected for the service of grand jurors, under their oaths, could do that duty irrespective of any undue remarks that might be made that might prejudice their minds.

The plea contains other grounds, but they go to contradict the record and the rule is elementary and well settled, that a plea in abatement which contradicts the record is bad on demurrer. See case of *Turk* v. *The State of Ohio*, 7th Ohio State Reports, page 240. The demurrer to this plea was properly sustained.

The next important question in the progress of the trial is raised on the admission of testimony, and I may say here that nearly all the questions propounded by the state were objected to. Counsel for defendants were diligent and persistent in making all possible objections and taking exceptions.

The exceptions, except the main one which I will refer to, go to the question as to whether there ought to be any of the evidence of the character offered, go to the jury, viz.: they objected to any evidence as to the county commissioners refusing to co-operate with the building committee, and the refusal to allow them to vote and to participate in the employment of the architect. If these objections are well taken, of course the state of Ohio would have no case in any sense against the defendants, for that class of evidence was essential to make out a case against them. But there is an objection to what we will call for convenience, the

"Weary" evidence.    Objection being made to the testimony given by a Mr. F. A. Weary, of Akron, Ohio.    He testified that on the 8th day of April, 1893, a little less than a month prior to the making of the contract with Yost & Packard, the defendants, Knight and Gibson came to Akron and at the Empire house, one of them made the proposition that they would award to him the contract for the architectural work if he would pay a consideration of fifteen hundred dollars apiece to them.    He further testifies that after the conversation at the hotel, they repaired to his office, and there, Gibson and Knight both being present, it was suggested by Gibson to Mr. Weary that he, Gibson, thought that Knight had been entirely too modest, that they would have to have three thousand dollars apiece before they would award him the contract.

An objection was made to this evidence, but it was admitted, and this ruling presents a serious and important question.    As to Stahl, this evidence was clearly inadmissible, as he was not present on either occasion, and of this I will speak later on in this opinion.

It was admitted as against all of the defendants.    The question as to Gibson and Knight is, was the evidence competent?    It must be borne in mind that the gist of this charge is, that the county commissioners wilfully, unlawfully and corruptly made this contract with Yost & Packard.    Again, in the indictment it is charged in substance that they wilfully, corruptly and unlawfully, in violation of section five of the special act authorizing the erection of a court house, refused to allow the building committee to vote with them ; refused to allow them to participate, and, in short, charging them with such conduct as would render nugatory and ineffective that provision of the special act.    That being the character of the charge and a motive is to be sought for so doing, if an intent is to be discovered for their action, is this evidence competent?    The conversation is laid as of the 8th of April, something less than a month before the contract was made.    Suppose that it had occurred that, after they had left Akron, these two county commissioners had gone to Cleveland to visit an architect, and had made a similar proposition to him, and then they had gone to Cincinnati and made a similar proposition there, and had gone to Toledo on a subsequent date between the 8th of April and the 3d of May and made a similar proposition, so that on their rounds from place to place they offered repeated inducements for their own personal emolument in attempting to make the contract—repeated efforts to obtain a bribe, and which the state was able to show, then could any one claim reasonably that such evidence is not competent to fix the motive, especially where it is charged that the motive was unlawful and corrupt?    We think the state would be entitled to make such showing.    That while it might not be essentially necessary to sustain the indictment in this case, that a corrupt motive should exist, yet if the state can show, and offers to show it, the proof is competent.    If it was competent in the case I have supposed, and the offer in this case was shortly before the letting of the contract, does it render the evidence incompetent because the state has only furnished one instance where the offer to accept a bribe was made?    A single transaction would be competent.    The weight would be greater if the act had been repeated more than once, but it does not detract from the rule of evidence that it only occurred on one occasion.    Such evidence would tend to show a motive in the minds of the commissioners for desiring a seclusion of their own number rather than the company of the building committee.

We have carefully noted and examined the cases and other authorities cited by counsel for plaintiffs in error, and have carried our investigation still further, and we think numerous authorities which we have examined justify this kind of testimony as against Knight and Gibson, and without further discussing that branch of the case, we hold there was no error in admitting that testimony as to Knight and Gibson.

It is said also that the court erred in his charge. We have carefully read and re-read his charge, and if the closing part of the charge is correct, the balance cannot be questioned. This paragraph with others were excepted to at the time and this presents the question directly, and no doubt it was considered necessary by the trial court to lay down as clearly as possible what the rule should be in the case on trial. The court says: " It has been properly said, and as applicable to cases of this character to establish an evil and corrupt motive, it is not necessary that a person should have acted from a pecuniary consideration alone. If a law which charges a duty upon a public officer is disobeyed and violated by him, from passion or prejudice, or from a spirit of willful, improper opposition, that is just as corrupt as if he had, in violation of existing law, acted from a money consideration."

That was the highest ground taken by the court, and if that is not error, we see no error in the balance of the charge We can understand very readily that it was a difficult question for the court to define, and it was a difficult thing to lay down the rule in such language as would enable the jury to fully comprehend what acts or omissions of the accused would come within the inhibition of the statute for the violation of which they were on trial.

It has been said that it was necessary to allege in an indictment for misconduct that the conduct was corrupt. It that be so it was necessary to make some definition of the place which the word *corrupt* occupied in the indictment. Now, if the parties knowing the requirements of the special act, read it, studied it, and fully comprehended its meaning, scope and purpose and the object sought to be obtained by it; if so knowing they refused to obey it and bluntly said, we will not obey the law and will not be governed by its provisions; if, as sworn officers acting under oath and who were charged by the first section of this special act with the responsibility of erecting the court house, they set themselves up in defiance of and determined opposition to the requirements of the statute, the court could properly then say that such unreasonable opposition, such bias or prejudice, such stubborn disposition to disobey the law and ignore it, and ignore the part that the circuit court of the county was required to take in the matter, would be a corrupt act although no money consideration therefor is shown. We think there is no error in the court so defining the offense. We find there is no error in the charge, and as to the special requests asked by the defendants, we simply say that we find almost literally the language of these special requests carried into the body of the charge.

There was a motion for a new trial, one of the grounds of which was that there was misconduct of a couple of the jurymen. There was some evidence given by the defendants that perhaps would not be admissible if properly objected to, but reading it all over, the jurors fairly met the case that was made against them of their misconduct and we think the defendants entirely failed to sustain that motion.

If what we say is true about the attitude that the county commissioners admit in their own evidence toward the building committee, es-

pecially if it is true as disclosed by the evidence given by the state—were the jury justified in their verdict as against Knight and Gibson? Repeating again, that the charge is, that they wilfully, corruptly and unlawfully made a contract with Yost & Packard; that they wilfully, corruptly and unlawfully refused to permit the building committee appointed by the circuit court to vote with them as they were authorized by section five of the special act; then if it was true that they knowingly, persistently and stubbornly stood out as against the operation of that act, were the jury right in their verdict? We think there was ample evidence to justify the finding as against Knight and Gibson and that the verdict is sustained by the evidence. That brings us then to notice the attitude that Jacob Stahl occupied in the case. The court admitted the disclosures of Mr. Weary as against them all. It is conceded by all that Stahl was not in Akron and there is not a circumstance to show that he was in any degree or manner a party to the temptation that was offered to Mr. Weary by these men. There is no link in the evidence by which Stahl was connected with that temptation. It is true the commissioners, Knight and Gibson, deny making such a proposition, and they bring a man by name of Stanley who testified that he was present and heard all the conversation that passed between them and there was no such thing said, yet, the jury may have believed—and they have the right to believe, one credible witness against several, but as to Stahl, it was admitted as we have remarked, without any qualification that he was not present, and in the later stage of the case there was no instruction as to how the jury should weigh this evidence as to Stahl. It is very evident that the jury believed the testimony of Mr. Weary, and it had an important bearing in coming to their conclusion, so that under the circumstances of the case we conclude that as to Jacob Stahl the sentence of the court be and is reversed, and the verdict should be and is set aside, and as to him the case is remanded for a new trial and further proceedings according to law. As to Knight: subsequent to the expiration of his term, owing to an amendment of the statute, he was appointed by the proper officers to fill a vacancy and he held the office of county commissioner by this appointment at the time of trial and sentence. The court fined him one hundred dollars and entered a judgment forfeiting his office. We think that was error so far as the forfeiture of office is concerned. The conviction and sentence under this statute does not disfranchise a man and does not render him ineligible to hold office, and his constituents, if there had been enough of them, could have elected him as his own successor. We think the court had no right to disturb that office he was holding by said appointment. The purpose of the statute is to break the tenure of the office which the guilty party held at the time he committed the offense and thus terminate his official power. If, by some law county officers have the power to fill a vacancy, we do not believe the court had the power to forfeit the office acquired by such appointment.

That part of the judgment will be reversed as to Knight, leaving the judgment as to the fine standing against him, and the judgment in other respects is affirmed as to Knight and Gibson.

*R. S. Parker*, and *Cyrus Huling*, Attorneys for Plaintiffs in Error.

*A. B. Murphy*, Prosecuting Attorney.

*F. A. Baldwin*, Attorney for State.